UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SEAN P. MATHEWS,

           Plaintiff,

    v.

ADM MILLING CO. and ARCHER-
DANIELS-MIDLAND AND COMPANY,

           Defendants.
_____

**DECISION AND ORDER**

1:15-CV-00969 EAW

## INTRODUCTION

Plaintiff Sean P. Mathews ("Plaintiff") brings this personal injury action against defendants ADM Milling Co. and Archer-Daniels-Midland and Company (collectively "Defendants"), for claims arising out of an incident that occurred when Plaintiff was cleaning Defendants' factory and had a portion of his right middle finger partially amputated. (Dkt. 58 at 2; Dkt. 61 at 4 (collectively "Joint Statement")). Plaintiff filed the instant lawsuit in the New York State Supreme Court, Erie County on October 12, 2015 (Dkt. 1-1), and Defendants removed the action to federal court on the basis of diversity on November 9, 2015 (Dkt. 1).

A trial is scheduled to begin within the next week. Presently before the Court is Defendants' motion *in limine* to preclude evidence related to Plaintiff's future earning capacity and/or loss of earnings. (Dkt. 57). For the reasons that follow, the Court grants Defendants' motion.

## BACKGROUND

On July 23, 2015, Plaintiff was employed by a cleaning contractor. (Joint Statement). Defendants hired the cleaning contractor to clean their factory. (*Id.*). The room Plaintiff cleaned had a piece of equipment called a "grain screw conveyor" that transports grain along a conveyer and has an auger contained in a metal tube. (*Id.*). One part of the tube had a hole that exposed the auger. (*Id.*). Plaintiff was sweeping up spilled grain near the conveyor, and a portion of his right middle finger was amputated. (*Id.*).

Plaintiff contends that Defendants either created the hole or had notice of the hole and were negligent in failing to timely repair the hole or correct the dangerous condition that caused Plaintiff's finger amputation and other injuries. (*Id.*). Defendants counter that the hole was not created by or known to them. (*Id.*).

On February 14, 2017, United States Magistrate Judge Jeremiah J. McCarthy, to whom pretrial matters had been referred (Dkt. 9; Dkt. 27), issued a scheduling order pursuant to Federal Rule of Civil Procedure 26 setting a deadline for the parties to identify any experts and provide any reports by no later than July 31, 2017. (Dkt. 30 at 1-2). On April 24, 2017, Plaintiff testified at his deposition that he had been accepted to study at the Lake Erie College of Osteopathic Medicine beginning in July of 2017, and that he intended to become an orthopedic surgeon, but his injury caused his hand to cramp and get tight, making it difficult to perform his lab work. (Dkt. 56 at 2). Additionally, Plaintiff was evaluated by a pain management specialist on May 13, 2017. (*Id.* at 3).

On October 18, 2018, more than a year after the deadline to submit expert witness disclosures and over a month after the trial date had been scheduled (Dkt. 46), Plaintiff moved for an extension of time to designate expert witnesses. (Dkt. 48). Judge McCarthy denied the motion on November 14, 2018, holding that Plaintiff failed to show good cause for an extension of the deadline. (Dkt. 56 at 7).

On May 20, 2019, the parties filed their pretrial submissions. (Dkt. 58; Dkt. 59; Dkt. 60; Dkt. 61). Defendants filed objections to Plaintiff's pretrial submissions on May 27 and 28, 2019. (Dkt. 63; Dkt. 64). Also on May 20, 2019, Defendants filed a motion *in limine*. (Dkt. 57). Plaintiff filed an opposition to Defendants' motion *in limine* on May 28, 2019 (Dkt. 65), and Defendants replied on May 31, 2019 (Dkt. 66). A pretrial conference took place before the undersigned on June 3, 2019 (Dkt. 68), and Plaintiff submitted further documents in opposition to the motion *in limine* via email on June 4, 2019 (Dkt. 74), to which Defendant responded via email on June 6, 2019 (Dkt. 75).

## DISCUSSION

### I. Legal Standard

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quotation omitted). "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."

*Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006).

## II. Plaintiff's Loss of Future Earnings

Plaintiff seeks to present evidence that his injury caused a loss of future earnings because it prevented him from becoming a surgeon. (Dkt. 65 at 3). Defendants contend in their motion *in limine* that Plaintiff should not be permitted to introduce such evidence because he is not introducing any expert testimony at trial, and therefore anything Plaintiff attempts to introduce would be speculative. (Dkt. 57 at 3-4). The Court finds Plaintiff's evidence regarding loss of future earnings is inadmissible for the reasons that follow.

Plaintiff contends that before the accident, he was planning on becoming a surgeon, but the accident has prevented him from doing so. Plaintiff intends to introduce the following evidence at trial to establish future loss of earnings as a surgeon: (1) the testimony of Stephany F. Esper, D.O. ("Dr. Esper"), his clinical professor, to testify about Plaintiff's performance at medical school and her discussions with Plaintiff about his future employment prospects; (2) the testimony of Plaintiff's treating physician Romanth Waghmare, M.D. ("Dr. Waghmare") regarding his conversations with Plaintiff about his physical and emotional limitations in medical school and Plaintiff's future employment prospects; (3) a written report by Dr. Waghmare where he opines, "I do not feel that [Plaintiff] will be comfortable and efficient in a medical specialty that requires repetitive use of the hand"; (4) the testimony of Plaintiff and the testimony of Plaintiff's parents who

had conversations with Plaintiff, his doctors, and his school representatives about his limitations; (5) reports from the U.S. Bureau of Labor about the wages of surgeons and the wages of general internists; and (6) Plaintiff's transcript from the Lake Erie College of Osteopathic Medicine. (Dkt. 65 at 3-4). The Court finds that much of the evidence would be otherwise inadmissible, and of the evidence that would be admissible it is not sufficient to meet the reasonable certainty standard.

"The admissibility of evidence regarding future earning capacity is within the wide discretion of the trial judge." *Oliveri v. Delta S.S. Lines, Inc.*, 849 F.2d 742, 745 (2d Cir. 1988). "The law on compensatory damages for economic injury in New York is clear. The basic rule is that loss of earnings must be established with reasonable certainty, focusing in part on the plaintiff's earning capacity both before and after his injury." *Kramer v. Showo Denka K.K.*, 929 F. Supp. 733, 743 (S.D.N.Y. 1996) (quotation omitted). "Under New York law, 'a claimant must present evidence that provides the finder of fact with a reasonable basis upon which to calculate the amount of damages. He need not prove the amount of loss with mathematical precision; but the jury is not allowed to base its award on speculation or guesswork.'" *Mugavero v. Arms Acres, Inc.*, 680 F. Supp. 2d 544, 581 (S.D.N.Y. 2010) (quoting *Sir Speedy, Inc. v. L & P Graphics, Inc.*, 957 F.2d 1033, 1038 (2d Cir. 1992)).

The testimony of all the witnesses about the conversations they had with Plaintiff regarding his future employment prospects are inadmissible hearsay pursuant to Federal Rules of Evidence 801 and 802. They are out-of-court statements offered to prove the truth

of the matter asserted, *i.e.*, what Plaintiff's employment prospects are, that are not subject to any hearsay exception.

Dr. Esper and Dr. Waghmare could offer some testimony, but it would have to be limited in scope. "It is well settled that under Rule 26(a)(2)(B) of the [Federal Rules of Civil Procedure], a treating physician can provide expert testimony in a deposition or at trial without having submitted a written report." *Coolidge v. United States*, No. 10-CV-363S, 2015 WL 5714237, at *7 (W.D.N.Y. Sept. 29, 2015) (quotation omitted) (collecting cases).[1] "However, without properly declaring a treating physician as an expert witness, the physician's testimony is limited to certain parameters[.]" *Motta v. First Unum Life Ins. Co.*, No. 09-3674(JS)(AKT), 2011 WL 4374544, at *3 (E.D.N.Y. Sept. 19, 2011) (collecting cases). "A treating physician who was not designated as an expert witness and failed to prepare the necessary expert report is prohibited from testifying 'concerning opinions not gleaned from his own diagnosis and treatment of the plaintiff.'" *Barack v. Am. Honda Motor Co., Inc.*, 293 F.R.D. 106, 109 (D. Conn. Apr. 18, 2013) (quoting *Franz*

---

[1] Defendants submitted an email to the Court on June 6, 2019, contending *Coolidge*'s discussion regarding treating physicians is inapplicable to the instant matter because *Coolidge* was a medical malpractice case in a different procedural posture. However, the standard that treating physicians can testify articulated in *Coolidge* applies outside the medical malpractice context and in the motion *in limine* context. *See Franz v. New England Disposal Techs., Inc.*, No. 10-CV-201A(Sr), 2011 WL 5443856, at *1 (W.D.N.Y. Nov. 9, 2011) (ruling on a motion *in limine* regarding treating physician testimony in a personal injury case). Moreover, Defendants concede that treating physicians for Plaintiff can testify about their observations and diagnosis, as well as Plaintiff's physical limitations, which are all limiting parameters recognized in the *Coolidge* decision. *See Coolidge*, 2015 WL 5714237, at *7.

*v. New England Disposal Techs., Inc.*, No. 10-CV-201A(Sr), 2011 WL 5443856, at *3 (W.D.N.Y. Nov. 9, 2011)); *see Lamere v. N.Y. State Office for the Aging*, 223 F.R.D. 85, 89 (N.D.N.Y. 2004) ("[A] treating physician . . . who has not complied with the reporting requirement of Rule 26(a)(2)(B) . . . should not be permitted to render opinions outside the course of treatment and beyond the reasonable reading of the medical records.").

In the instant matter, Dr. Esper and Dr. Waghmare were not designated as expert witnesses, nor did they prepare expert reports. If Plaintiff lays sufficient foundation to demonstrate that these witnesses treated Plaintiff for his injury, they could offer their opinion that, based on their treatment of Plaintiff and personal knowledge of Plaintiff's performance in his osteopathic studies, Plaintiff's hand injury means he cannot engage in activities that require repetitive motions of his hand. However, it is inadmissible for them to offer an opinion that Plaintiff would have likely become a surgeon absent the injury because it would require knowledge outside the course of their treatment of Plaintiff. The injury occurred two years before Plaintiff was admitted to the osteopathic program, so they do not have personal knowledge about Plaintiff's capabilities prior to the incident. Additionally, such testimony would require specialized knowledge of the medical field's hiring practices outside the scope of what these witnesses can testify to, like whether the Lake Erie College of Osteopathic Medicine tends to produce surgeons and how Plaintiff's academic performance impacts the likelihood of him getting into a surgical program.

As far as the Bureau of Labor statistics offered by Plaintiff, the Court finds that it could take judicial notice of them. Under Federal Rule of Evidence 201(b), "[t]he court

may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Courts routinely take judicial notice of governmental records retrieved from official government websites. *See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting cases); *see also Earl v. Bouchard Transp. Co., Inc.*, 735 F. Supp. 1167, 1175 (E.D.N.Y. 1990) ("Statistical charts, such as the mortality tables and work-life expectancy tables prepared by the United States Department of Labor, compile averages and are often deemed authoritative, particularly in the absence of contradictory particularized evidence."); NY PJI 2:290, Comments ("[T]he Department of Labor tables may be judicially noticed[.]"). As the statistical evidence from the Bureau of Labor offered by Plaintiff comes from the official website of the U.S. Department of Labor, the Court could take judicial notice of it.[2] Also, the admissibility of Plaintiff's transcript has not been disputed.

However, the Court finds that even if the above evidence were admitted, it would not demonstrate that absent the injury there is a reasonable certainty Plaintiff would have become a surgeon. The Bureau of Labor tables would demonstrate what surgeons typically make as compared with what general internists make. However, the remaining evidence

---

[2] Defendants argue that the presentation of such statistics without an expert to explain them would be confusing to a jury, and therefore excludable under Rule 403. (Dkt. 75 at 2). Although the Court is inclined to agree with Defendants on this point, it does not reach this issue because it finds that even if the tables were admitted to show the disparity between what surgeons make and what general internists make, there is still not sufficient evidence to meet the reasonable certainty standard.

Plaintiff plans to present, *i.e.* that his injury means he does not have the option of becoming a surgeon and that he intended to become a surgeon, only demonstrates it is *possible* that Plaintiff would have become a surgeon prior to the injury, not that there is a reasonable certainty he would have done so.

While true that New York courts permit recovery of lost future earnings for a potential career, *see Dobski v. City of Schenectady*, 272 A.D.2d 662, 664 (3d Dep't 2000) (holding future lost earnings testimony was admissible where "plaintiff presented the testimony of an expert who gave an opinion concerning . . . the reduction in future earnings due to her inability to pursue a career as a nurse"), "[u]nsubstantiated testimony, without documentation, is insufficient to establish lost earnings," *Lodato v. Greyhawk N. Am., LLC*, 39 A.D.3d 494, 496 (2d Dep't 2007); *see Wang v. Yum! Brands, Inc.*, No. 05-CV-1783 (JFB)(MDG), 2007 WL 1521496, at *6 (E.D.N.Y. May 22, 2007) (precluding plaintiffs from seeking damages for lost future wages "because plaintiffs have failed to offer any evidence regarding Wang's lost wages beyond her own unsubstantiated testimony"). New York courts have also held that a plaintiff's intent, without more, is speculative and does not establish lost earnings with reasonable certainty. *See O'Buckley v. County of Chemung*, 149 A.D.3d 1232, 1236 (3d Dep't 2017) (precluding admission of lost future income evidence despite the plaintiff's intentions because it was based on events that were "uncertain, dependent on future changeable events and, thus, inherently speculative" (quotation omitted)); *Galaz v. Sobel & Kraus*, 280 A.D.2d 427, 428 (1st Dep't 2001) (precluding evidence on loss of future income where the plaintiff "offered no evidence,

beyond his self-serving testimony of his intention to return to work as a mechanic, of any job opportunities").

The *O'Buckley* case is instructive. In *O'Buckley*, the plaintiff was a high school junior who prior to his death "had expressed a 'strong desire' to enlist with the military upon graduation and then obtain employment with the State Police." 149 A.D.3d at 1235-36. The court held it was proper to preclude as too speculative evidence of: (1) wages based on graduating, enlisting with the military, and serving his career there, and (2) graduating, serving in the military, and then working for the state police. *Id.* at 1236. The court explained such evidence is based on events that are "uncertain, dependent on future changeable events and, thus, inherently speculative." *Id.* (quoting *Farrar v. Brooklyn Union Gas Co.*, 73 N.Y.2d 802, 804 (1988)).

In the instant matter, whether Plaintiff could have become a surgeon absent the injury is uncertain because it depends on other changeable events aside from the injury. The *O'Buckley* court found that a high school degree gives the graduate the option to pursue many different careers, not just the military, that someone who finishes their military service may also enter any number of different secondary career paths, and that intent is not sufficient to establish with reasonable certainty that the plaintiff would have followed through and pursued those careers. *See id.* at 1235-36. Similarly, a college degree opens the door to a wide variety of careers, and someone graduating as a doctor of osteopathy can practice many different types of medicine, not just surgery. Although Plaintiff has enrolled at the Lake Erie College of Osteopathic Medicine since the accident, he has offered no

other evidence, aside from his intent to become a surgeon, to show that but-for this injury, his trajectory to become a surgeon was set to a reasonable certainty. Moreover, Plaintiff has been precluded from offering expert testimony demonstrating as much. While the evidence Plaintiff can present may show it was *possible* for Plaintiff to become a surgeon prior to the accident, it is not sufficient to satisfy the reasonable certainty standard. *See Wanamaker v. Pietraszek*, 107 A.D.2d 1020, 1022 (4th Dep't 1985) (holding it was proper to exclude evidence giving "rise to a danger that the jury would regard as probable what is at most only possible" (quotation omitted)); *see also Carroll v. United States*, 295 F. App'x 382, 385 (2d Cir. 2008) ("It is uncontested that [the plaintiff] never worked as a physician's assistant and never took the licensing exam necessary to practice medicine. Moreover, he has failed to support his claim that he was offered a position as a physician's assistant . . . with any credible evidence. Nor has he shown that he accepted or worked in such a position. Thus, the magistrate judge's conclusion that [the plaintiff]'s lost future earnings should not be based upon the earning capacity of a physician or physician's assistant was not clear error."); *Westbrooks v. City of Buffalo*, No. 11-CV-994S, 2014 WL 297107, at *6 (W.D.N.Y. Jan 27, 2014) (dismissing plaintiff's claim for lost wages because "he bases his claim on the purely speculative proposition that, but for the arrest, he would have made it to his interview and been hired"); *Kaylor v. Amerada Hess Corp.*, 141 A.D.2d 331, 331 (1st Dep't 1988) (finding evidence of loss of future income should not have been let into evidence where "although plaintiff asserts that it was always his intention to go to sea" the trial record lacked "any indication that plaintiff would have spent most, if not all, of the

remainder of his working life on board ship"); *cf. Stringile v. Rothman*, 175 A.D.2d 281, 282 (2d Dep't 1991) (holding the future loss of earnings damages were too speculative because an intermediary would have had to approve the sale of the shares).

The cases Plaintiff relies on are not persuasive. In those cases, the courts held there was reasonable certainty of lost future earnings because the plaintiff was either unable to finish a degree for a specific program he was enrolled in, *see Horan v. Dormitory Auth.*, 43 A.D.2d 65, 69-70 (3d Dep't 1973) (awarding damages to student who could no longer receive his pharmacy degree), or had been accepted into a program that produced candidates for only one type of job, *see Keefe v. E & D Specialty Stands, Inc.*, 272 A.D.2d 949, 949 (4th Dep't 2000) (awarding damages to plaintiff accepted into an ironworking apprenticeship); *Cranston v. Oxford Res. Corp.*, 173 A.D.2d 757, 758 (2d Dep't 1991) (awarding damages to plaintiff scheduled to enter into the Police Academy). In contrast, Plaintiff here had not even applied to medical school or osteopathy school when he was injured, the injury did not prevent him from completing his undergraduate degree, and the injury will not prevent him from completing his osteopathy degree. Moreover, as previously discussed, the school Plaintiff enrolled in does not only produce surgeons; it is a general program from which there are many different career paths its students can take.

The Court is also not persuaded by Plaintiff's reliance on the 60-year-old First Department case *Grayson v. Irvmar Realty Corp.*, 7 A.D.2d 436 (1st Dep't 1959). The court there held that the plaintiff could present evidence about her potential earning capacity as an operatic singer even though that "future is a highly speculative one." *Id.* at

remainder of his working life on board ship"); *cf. Stringile v. Rothman*, 175 A.D.2d 281, 282 (2d Dep't 1991) (holding the future loss of earnings damages were too speculative because an intermediary would have had to approve the sale of the shares).

The cases Plaintiff relies on are not persuasive. In those cases, the courts held there was reasonable certainty of lost future earnings because the plaintiff was either unable to finish a degree for a specific program he was enrolled in, *see Horan v. Dormitory Auth.*, 43 A.D.2d 65, 69-70 (3d Dep't 1973) (awarding damages to student who could no longer receive his pharmacy degree), or had been accepted into a program that produced candidates for only one type of job, *see Keefe v. E & D Specialty Stands, Inc.*, 272 A.D.2d 949, 949 (4th Dep't 2000) (awarding damages to plaintiff accepted into an ironworking apprenticeship); *Cranston v. Oxford Res. Corp.*, 173 A.D.2d 757, 758 (2d Dep't 1991) (awarding damages to plaintiff scheduled to enter into the Police Academy). In contrast, Plaintiff here had not even applied to medical school or osteopathy school when he was injured, the injury did not prevent him from completing his undergraduate degree, and the injury will not prevent him from completing his osteopathy degree. Moreover, as previously discussed, the school Plaintiff enrolled in does not only produce surgeons; it is a general program from which there are many different career paths its students can take.

The Court is also not persuaded by Plaintiff's reliance on the 60-year-old First Department case *Grayson v. Irvmar Realty Corp.*, 7 A.D.2d 436 (1st Dep't 1959). The court there held that the plaintiff could present evidence about her potential earning capacity as an operatic singer even though that "future is a highly speculative one." *Id.* at

440. However, the court's holding focused on plaintiffs such as "[t]he would-be operatic singer, or the would-be violin virtuoso, or the would-be actor, [who] are not assured of achieving their objectives merely because they have some gifts and complete the customary periods of training." *Id.* The court explicitly contrasted these types of plaintiffs with "those who, provided they have the intelligence and opportunities, train for the more skilled occupations and professions, not so heavily dependent upon unusual native gifts, [and] will more likely achieve their objectives." *Id.* at 439. The court's holding was addressed to plaintiffs pursuing the arts, not to someone like Plaintiff pursuing a profession as a surgeon. The pattern jury instructions Plaintiff's counsel referenced during oral argument are also not applicable here for the same reason. New York Pattern Jury Instruction 2:292 states: "Plaintiff AB has offered evidence that (he, she) has been studying for a career (*state career, e.g.*: in opera, the theatre, music) for which (he, she) has special talent," and the comments to the jury instructions state: "The impairment of *artistic pursuits* is a proper element of damage," *id.* (emphasis added).

Accordingly, the Court finds Plaintiff cannot establish with a reasonable certainty that he would have become a surgeon absent the injury, and that it is appropriate to preclude Plaintiff from introducing evidence of lost future income.

## CONCLUSION

For the forgoing reasons, Defendants' motion *in limine* (Dkt. 57) is granted.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: June 11, 2019
      Rochester, New York